NOTE:  This disposition is nonprecedential.

# United States Court of Appeals
# for the Federal Circuit

_____

**DELVIN LAMAR BALDWIN,**
*Petitioner*

**v.**

**MERIT SYSTEMS PROTECTION BOARD,**
*Respondent*

_____

2019-2218

_____

Petition for review of the Merit Systems Protection Board in No. DC-0752-19-0400-I-1.

_____

Decided:  March 5, 2020

_____

DELVIN LAMAR BALDWIN, Yorktown, VA, pro se.

CALVIN M. MORROW, Office of General Counsel, United States Merit Systems Protection Board, Washington, DC, for respondent.  Also represented by KATHERINE MICHELLE SMITH, TRISTAN LEAVITT.

_____

Before LOURIE, MOORE, and HUGHES, *Circuit Judges.*

PER CURIAM.

Pro se petitioner Delvin Baldwin petitions for review of a decision of the Merit Systems Protection Board dismissing his appeal for lack of jurisdiction. Mr. Baldwin was removed from federal employment. Under the negotiated grievance procedure that covers Mr. Baldwin's position, he could appeal his removal by filing a grievance under the Master Labor Agreement or by appealing to the Board, but not both. Mr. Baldwin knew that his union filed a grievance related to his removal, but he did not affirmatively disavow the union's initiation of the grievance process on his behalf. These actions constitute a binding election of the negotiated grievance procedure, which precludes the Board's jurisdiction over Mr. Baldwin's appeal. We therefore affirm the Board's dismissal.

I

The Defense Logistics Agency, a support agency within the Department of Defense, issued its decision to remove Mr. Baldwin from his position as a Materials Handler Leader pursuant to 5 U.S.C. § 7512. The letter was dated January 14, 2019 and was signed by Mr. Baldwin the next day. Mr. Baldwin's position was covered under a negotiated grievance procedure governed by a Master Labor Agreement (MLA). The removal decision letter informed Mr. Baldwin of his appeal rights, including filing a grievance under the MLA or appealing to the Board, but not both. Resp. App. 22–23.[1] *See also* 5 U.S.C. § 7121(e)(1) (stating that actions under § 7512 "which also fall within the coverage of the negotiated grievance procedure may, in the discretion of the aggrieved employee, be raised either under the appellate procedures of section 7701 of this title or under the negotiated grievance procedure, but not both").

---

[1]    Resp. App. refers to the Supplemental Appendix included with the Respondent's brief.

On February 1, 2019, Quinton Montague, the vice president of the union that represented Mr. Baldwin, sent an email entitled "Request for Formal Grievance" (grievance email) to John Pearson, Mr. Baldwin's third-line supervisor. Resp. App. 26. Mr. Baldwin was copied on this email. It requested "a mutually agreed meeting to discuss the subject grievance for Delvin Baldwin," citing the portion of the governing MLA that sets out the procedure for a formal grievance. *Id.* The grievance email also stated a "[f]ormal signed letter [would be] coming soon." *Id.* No such letter appears in the record.

On February 14, 2019, Mr. Pearson, Mr. Baldwin, and two union representatives met. *See* Resp. App. 32–33 (Formal Grievance Response). Mr. Baldwin presented at least three arguments against his removal. *Id.* Mr. Pearson, on behalf of the agency, sustained Mr. Baldwin's removal. *Id.* On March 27, 2019, the union notified Mr. Pearson of its intent to advance Mr. Baldwin's case to arbitration. Again, Mr. Baldwin was copied on this email.

Three days later, Mr. Baldwin appealed his removal to the Board. He contended that he had not elected to file a grievance, as evidenced by the lack of a signed document as promised in the grievance email. In effect, he argued that the union acted on its own by sending the grievance email. The agency moved to dismiss for lack of jurisdiction. The agency argued that Mr. Baldwin chose to grieve his removal under the negotiated grievance procedure of the MLA rather than appeal to the Board; the Board therefore had no jurisdiction over his appeal.

The Administrative Judge issued an Order to Show Cause, giving Mr. Baldwin a chance to allege facts to establish a prima facie case for Board jurisdiction. Mr. Baldwin again argued that the union initiated the grievance process without his consent and that, therefore, he made no binding election of the grievance process. Mr. Baldwin also argued that the email only suggested an intent to file

a formal grievance; it was not a formal grievance because no signed letter ever followed. And even if it were considered a formal grievance, he argued that it was untimely because it was not filed within ten working days after the agency issued the removal decision.

The agency reasserted its position that the union's February 1 email was a formal grievance that effected a binding election of the grievance process under the MLA. The agency also submitted a declaration from Mr. Pearson that Mr. Baldwin attended and actively participated in the February 14 grievance meeting. According to the Administrative Judge, Mr. Baldwin sought to strike Mr. Pearson's declaration because "Pearson could not know the level of [Mr. Baldwin's] engagement and thus could not state that he was 'fully engaged' in the grievance meeting." Resp. App. 3–4.

The Administrative Judge dismissed Mr. Baldwin's appeal for lack of jurisdiction. She found that he made a binding election of the grievance process by participating in and failing to disavow the grievance process before his appeal to the Board.

In the absence of a petition for administrative review, the Administrative Judge's initial decision became the final decision of the Board on July 5, 2019.

II

We have jurisdiction over a petition to review a final decision of the Board. 5 U.S.C. § 7703(b)(1)(A); 28 U.S.C. § 1295(a)(9). "Whether the [B]oard had jurisdiction to adjudicate a case is a question of law, which we review *de novo.*" *Forest v. Merit Sys. Prot. Bd.*, 47 F.3d 409, 410 (Fed. Cir. 1995). We review the Board's factual findings affecting the jurisdictional inquiry for substantial evidence. *Lentz v. Merit Sys. Prot. Bd.*, 876 F.3d 1380, 1384 (Fed. Cir. 2017).

On appeal, Mr. Baldwin again argues the grievance email sent by the union was not a binding election of the

grievance process because it was not (1) timely and (2) "in writing, in accordance with the parties['] grievance procedure." Pet. Br. 12 (emphasis omitted); 5 U.S.C. § 7121(e)(1). We disagree. Section 7121(e)(1) makes clear that Mr. Baldwin had two relevant options to pursue after his removal: a grievance under the MLA's negotiated grievance procedure, or an appeal to the Board. Though the record reflects no signed grievance letter, Mr. Baldwin elected the grievance process by participating in and failing to disavow the grievance process initiated by the February 1 grievance email.

## A

Under the MLA, Article 36 § 8(A), an employee grievance must be filed within ten work days from the date of the decision notice. Resp. App. 29.[2] Here, the grievance email was sent thirteen working days after Mr. Baldwin's removal decision. But Article 36 § 10 of the MLA also provides that "[t]ime limits at any step of the grievance procedure may be extended by the mutual consent of the parties." Resp. App. 31. And as the Administrative Judge cited in her decision, the Board has held that untimely filed grievances can effect valid elections under § 7121. *Sherman v. Dep't of Homeland Sec.*, 122 M.S.P.R. 644 ¶ 17 (M.S.P.B. Sept. 11, 2015) (finding a valid election of the grievance process under § 7121(g), despite untimely filing, because the agency "reached the merits of the grievance and denied it on substantive grounds"). In granting the grievance meeting and then issuing a formal grievance

---

[2]    The agency contends that because the union filed this grievance it was timely because union grievances must be filed within twenty working days. *See* Resp. App. 30 (MLA, Article 36 § 8(E)). Mr. Baldwin disputes whether this period applies. We need not reach this argument because the Administrative Judge did not err in her analysis under the ten-day period.

response, the agency reached the merits of the grievance and denied it accordingly.  The Administrative Judge did not err in finding that the grievance email was a binding election despite being submitted three days late.

B

Mr. Baldwin next contends that the grievance email should not be given effect because it does not meet all the requirements of the MLA's Formal Grievance procedures. *See* Resp. App. 29 (Article 36 § 8(D)'s requirements for a formal grievance, including that it "must be signed by the grievant(s)").  But the union and the employee have independent rights to file a grievance over a matter within the scope of the grievance procedure.  5 U.S.C. § 7121(b)(1)(C)(i)–(ii).  While the union may file a grievance, the Board requires that employees have knowledge of grievances filed on their behalf.  *Kendrick v. Dep't of Veterans Affairs*, 74 M.S.P.R. 178, 181 (M.S.P.B. 1997).  *See also Morales v. Merit Sys. Prot. Bd.*, 823 F.2d 536, 538–39 (Fed. Cir. 1987) (finding an employee's grievance "void" where she did not request or ratify a grievance filed on her behalf, entitling her to appeal to the Board*)*.  In *Kendrick*, the Board identified a "signed writing" or "oral acknowledgement" as "explicit evidence" of an employee's binding election of the grievance process.  74 M.S.P.R. at 182.  But it also said that an employee's "knowledge that the union had filed a grievance regarding the action coupled with a failure on the appellant's part to affirmatively disavow that the grievance was being pursued [o]n his behalf would constitute implicit evidence that the appellant had authorized the union to present a grievance [o]n his behalf." *Id.*

Such is the case here.  We see no error in the Administrative Judge's reliance on *Kendrick*.  And substantial evidence supports her finding that Mr. Baldwin failed to affirmatively disavow that the union was pursuing a grievance on his behalf.  Resp. App. 7 (finding Mr. Baldwin "failed to make a nonfrivolous allegation that the union

filed a grievance without his consent, thus making his grievance nonbinding"). Mr. Baldwin presented no evidence that he disavowed the grievance at any time during the months-long grievance process. He received notice that he could not elect both the grievance process and appeal to the Board; he was copied on the email grievance, attended the resulting grievance meeting, and presented arguments against his removal; and he received the agency's Formal Grievance Response, all without objecting to the union's actions.

## III

We have considered Mr. Baldwin's remaining arguments and find them unpersuasive.[3] Because the Board properly dismissed Mr. Baldwin's appeal for lack of jurisdiction, we affirm.

## AFFIRMED

No costs.

---

[3]   In particular, Mr. Baldwin contends that the Administrative Judge erred in considering Mr. Pearson's declaration, which details Mr. Baldwin's participation in the grievance meeting. Mr. Baldwin characterizes the declaration as "manufactured evidence." Pet. Br. 12. No record evidence leads us to doubt the veracity of Mr. Pearson's declaration. In fact, it largely confirms the substance of Mr. Pearson's contemporaneous, post-meeting Formal Grievance Response. *See* Resp. App. 32 (reviewing the three main arguments raised during the grievance meeting). And the Administrative Judge allowed both Mr. Baldwin and the agency to submit new evidence in response to its Order to Show Cause. We see no error in the Administrative Judge's acceptance or consideration of Mr. Pearson's declaration.